UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DAVID AGUILAR,

                  Plaintiff,

v.

J. TAFELMEYER, et al.,

                  Defendants.

Case No. 3:23-cv-00547-ART-CSD

SCREENING ORDER

        Plaintiff David Aguilar, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil-rights complaint under 42 U.S.C. § 1983 and filed an application to proceed *in forma pauperis*. (ECF Nos. 1-1, 1). Aguilar moves the Court to find and appoint him a free attorney. (ECF No. 1-3). He also moves the Court to correct errors it made when docketing his initial documents. (ECF No. 3).

        The Court now screens Aguilar's civil-rights complaint under 28 U.S.C. § 1915A. Having done so, the Court finds that Aguilar states colorable claims under the Eighth Amendment about use of excessive force and indifference to serious medical needs, so those claims will proceed. The Court denies Aguilar's motion to correct clerical errors as moot because the Court has already corrected the noted errors. (*See* ECF No. 1 (modified docket text)). Finally, the Court is inclined to appoint Aguilar counsel for litigation purposes but not for the purpose of participating in the Court's Inmate Early Mediation Program. So the Court gives Aguilar 30 days to file a notice informing the Court how he wants to proceed.

**I.    SCREENING STANDARD**

        Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the

1

Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Additionally under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw*

*v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id.*

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed sua sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations, like fantastic or delusional scenarios. *See Neitzke v. Williams,* 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**II.    SCREENING OF COMPLAINT**

Aguilar sues J. Tafelmeyer, Joseph Johnson, Mahon, and Sheeks for events that allegedly happened while he was incarcerated at Northern Nevada

Correctional Center ("NNCC"). (ECF No. 1-1 at 1–2). He brings one claim and seeks monetary and injunctive relief. (*Id.* at 4–6). Aguilar alleges the following.[1]

### A. Aguilar's factual allegations

On September 13, 2021, Corrections Officer Joseph Johnson entered Aguilar's housing unit and struck Aguilar in the face with his own headphones. (*Id.* at 4). Aguilar "backhanded" Johnson with his walking cane in response. (*Id.*) Johnson ordered Aguilar to stand up, and Aguilar complied. (*Id.*) Johnson then punched Aguilar in the face. (*Id.*) Next, Corrections Officers J. Tafelmeyer, Mahon, and Sheeks entered the housing unit and ordered all the other inmates to leave the dorm. (*Id.*) The inmates complied, except that inmate Roy Moraga returned and witnessed what happened next. (*Id.*)

Once Aguilar was placed in "full mechanical restraints," the corrections officers beat and tased him. Tafelmeyer refused to allow Aguilar to receive medical care. (*Id.*) Aguilar was stripped naked and placed in a cell until the next day. (*Id.*) On September 14, 2021, Aguilar was placed in a wheelchair—because of the extent of his injuries caused by the defendants—and transported to Ely State Prison ("ESP") where he received medical care. (*Id.* at 4–5).

At the time of the beating, Aguilar was an ADA inmate who recently had surgery on one of his eyes to correct a cataract. (*Id.* at 5). Aguilar was thus "partially blind" during the September 13 attack. (*Id.*) Aguilar was confined to a wheelchair for six months because of the injuries he sustained during the attack. (*Id.*) He now must use a walker to get around. (*Id.*) Aguilar also suffered "major bruises" and "swelling of his face" from the attack. (*Id.*) Aguilar has glaucoma in both eyes. (*Id.*)

---

[1] Roy Daniels Moraga helped prepare the complaint. (ECF No. 1-1 at 6).

**B.     Aguilar's claims**

Based on these allegations, Aguilar contends that defendants violated his rights under the Eighth Amendment. The Court liberally construes the complaint as bringing claims under the Eighth Amendment based on two different theories of liability: (1) use of excessive force and (2) indifference to serious medical needs. The Court addresses each theory and any issues below.

**1.     Aguilar arguably states a colorable Eighth Amendment excessive-force claim.**

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment's] Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Courts examine five factors in determining whether the use of force was malicious and sadistic: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (quotation omitted). An inmate need not have suffered a serious injury to bring an excessive-force claim against a prison official, but "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *McMillian*, 503 U.S. at 9–10 (quoting *Whitley*, 475 U.S. at 327). And officers can be held liable "for failing to intercede in situations where excessive force is claimed to be employed by other officers only if 'they had an opportunity to intercede.'" *See Hughes*, 31 F.4th at 1223 (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000)).

5

Aguilar alleges that Johnson entered his housing unit and struck him in the face with his own headphones. When Aguilar responded by backhanding Johnson with his walking cane, Johnson ordered Aguilar to stand up and then punched him in the face. Next, Corrections Officers J. Tafelmeyer, Mahon, and Sheeks arrived, ordered the other inmates to leave the housing unit, and proceeded to beat and tase Aguilar after they placed him in mechanical restraints. As a result of the beating, Aguilar was required to use a wheelchair for six months and now needs a walker to get around. And he suffered "major bruising" and swelling in his face from the attack. Aguilar was partially blind during these events because he recently had surgery to correct a cataract in one eye. The defendants knew about Aguilar's surgery and partial blindness.

These allegations are enough for screening purposes to state a colorable claim that the defendants struck and tased Aguilar maliciously and sadistically for the purpose of causing harm and not in a good faith effort to maintain discipline. The Eighth Amendment excessive-force claim can therefore proceed against Johnson, Tafelmeyer, Mahon, and Sheeks.

### 2. Aguilar arguably states a colorable Eighth Amendment medical-indifference claim.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012),

*overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (cleaned up). To satisfy the second prong—deliberate indifference—a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (cleaned up). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

Aguilar alleges that he was seriously injured when Johnson, Tafelmeyer, Mahon, and Sheeks struck and tased him. Tafelmeyer, who was the senior officer present, refused to allow Aguilar to receive medical care. Aguilar received medical care when he arrived at ESP the next day. Aguilar's injuries were so severe that he was forced to use a wheelchair for six months and must now use a walker to get about. These allegations are enough for screening purposes to arguably state that Tafelmeyer purposefully and unnecessarily continued Aguilar's pain and medical condition. The Eighth Amendment claim about indifference to serious medical needs can therefore proceed against Tafelmeyer.

**III.    AGUILAR MUST FILE NOTICE ABOUT HOW HE WANTS TO PROCEED**

Prisoner civil-rights cases under 42 U.S.C. § 1983 generally require significant time and resources to resolve. These costs are perhaps most acutely

felt by incarcerated plaintiffs who understandably want swift resolution for alleged constitutional violations but often lack the funds needed to retain an attorney to prosecute their claims. To help minimize these costs, the Court created the Inmate Early Mediation Program, in which eligible § 1983 cases are sent to mediation after the Court screens the complaint. Defendants in cases that the Court has referred to its mediation program have the right not to make any settlement offers, and plaintiffs have the right not to accept settlement offers. When mediation does not appear likely to be productive and save resources, the Court may choose to remove a case from the program or immediately put the case on the normal litigation track.

This action is eligible to participate in the Court's mediation program, and this appears to be a case where both sides could have productive settlement discussions and save resources. But Aguilar moves the Court to find and appoint him a free attorney, arguing that he has cataracts in both eyes that prevent him from reading, he is not trained in the law, and another inmate has helped him prepare his documents in this action. (ECF No. 1-3). The Court is inclined to appoint Aguilar counsel for litigation purposes but not for the purpose of participating in the mediation program. So the Court gives Aguilar 30 days to file a notice stating if he wants to either (1) participate without counsel in the mediation program or (2) be referred to the Pro Bono Counsel Program and proceed onto the litigation track.

If Aguilar elects to participate without counsel in the Court's Inmate Early Mediation Program, then the Court will refer this matter for mediation and defer ruling on the application to proceed *in forma pauperis* and the motion for the appointment of counsel. If the parties reach a settlement during the mediation process, Aguilar will not be required to pay the $350 filing fee.

If Aguilar elects to proceed onto the normal litigation track, then the Court will grant his application to proceed *in forma pauperis*, refer this action to the

Court's Pro Bono Counsel Program, and stay this action for 60 days while the Court attempts to identify counsel willing to be appointed as pro bono counsel for Aguilar. Granting Aguilar's application to proceed *in forma pauperis* will not relieve him of the obligation to pay the full $350 statutory filing fee, it just means that the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b).

## IV. CONCLUSION

It is therefore ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that a decision on the motion to appoint counsel (ECF No. 1-3) is deferred.

It is further ordered that the motion to correct clerical error (ECF No. 3) is denied as moot.

It is further ordered that the Eighth Amendment excessive-force claim can proceed against J. Tafelmeyer, Joseph Jackson, Mahon, and Sheeks.

It is further ordered that the Eighth Amendment medical-indifference claim can proceed against J. Tafelmeyer.

It is further ordered that Aguilar has until January 19, 2024 to file a notice with the Court stating if he wants to either (1) participate without counsel in the Inmate Early Mediation Program or (2) be referred to the Pro Bono Program and proceed onto the normal litigation track.

The Clerk of the Court is directed to file the complaint (ECF No. 1-1) and send Plaintiff David Aguilar a courtesy copy of it.

Dated this 20th day of December 2023.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

9