Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| DAVID AGUILAR,<br><br>　　Plaintiffs,<br><br>　　V.<br><br>TAFELMEYER, et al.<br><br>　　Defendant(s). | Case No.: 3:23-cv-00547-ART-CSD<br><br>**REPLY TO OPPOSITION TO MOTION FOR LEAVE TO AMENDED COMPLAINT [ECF No. 54]** |

　　COMES NOW, Plaintiff DAVID AGUILAR ("Plaintiff"), by and through undersigned counsel, and hereby submits this Reply in Support of Motion for Leave to Amend Complaint against Defendants TAFELMEYER, JOSEPH JOHNSON, ZACHARY MAHON, and SKYLER SHEEKS, and to add THE NEVADA DEPARTMENT OF CORRECTIONS, a political subdivision of the State of Nevada.

　　This Reply is made and based upon all of the pleadings and records on file for this proceedings together with every exhibit that is mentioned herein or attached hereto (each of which is incorporated by this reference as though it were set forth hereat in haec verba),

if any there be, as well as the points and authorities set forth directly hereinafter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

The Court should grant Plaintiff's Motion for Leave to Amend because the proposed amendments are not futile and would serve the interests of justice. Defendants argue that the amendment should be denied because: (1) Aguilar never filed a grievance alleging that he was discriminated against on the basis of his disability, and (2) At no point in the proposed Amended Complaint does Aguilar allege he was discriminated against because he is disabled. Aguilar will respond to these arguments in turn below.

**ARGUMENT**

Defendants correctly note that futility is one factor courts consider when evaluating a motion for leave to amend, citing *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 n. 5 (9th Cir. 2011). However, as the opposition acknowledges, leave to amend should be "freely given when justice so requires." The opposition's futility arguments fail because both the exhaustion requirement and the pleading standard for ADA claims are satisfied.

*A. Plaintiff Properly Exhausted His Administrative Remedies*

Defendants argue that "Aguilar never filed a grievance alleging that he was discriminated against on the basis of his disability" and that merely stating he is an "ADA inmate" without explicitly alleging an ADA violation is insufficient. This argument fails for several reasons.

First, while the PLRA requires administrative exhaustion of ADA claims, *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059–62 (9th Cir. 2007), it does not require that a grievance include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. *Griffin v. Arpaio*, 557 F.3d 1117, 1118 (9th Cir. 2009(superseded on grounds related to a change in administrative regulations in

California, See *Bulkin v. Ochoa*, No. 1:13-cv-00388 DAD DLB PC, 2016 U.S. Dist. LEXIS 23374 (E.D. Cal. Feb. 24, 2016) ). The Ninth Circuit has made clear that "a grievance is sufficient for exhaustion purposes if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120.

    Second, Plaintiff's grievance history demonstrates he properly exhausted his claims in accordance with NDOC rules. In grievance #20063128564, dated September 16, 2021, Plaintiff explicitly identified himself as "partially blind and I am an ADA inmate" [ECF 51-1] and described being assaulted while handcuffed by multiple officers. In his first level appeal of that grievance, dated October 27, 2021, Plaintiff emphasized he was an "ADA person blind person" [ECF 51-1] who was assaulted while restrained. These grievances provided NDOC clear notice that a disabled inmate was claiming mistreatment related to and because of his disability status.

    The level of detail necessary for proper exhaustion will "vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Fuqua v. Ryan*, 890 F.3d 838, 845 (9th Cir. 2018). NDOC's Administrative Regulations ("AR") in Chapter 740 are attached hereto as Exhibit 1. Nothing in the ARs requires explicit citation to the ADA or use of specific legal terminology. According to AR 740.03(1) and 740.03(1)(A), inmates must "factually demonstrate a loss or harm" and "state the action or remedy that will satisfy the claim in the grievance." AR 740.03(1)(C) requires grievances to be "legible, with a clearly defined remedy request." Under AR 740.08(5-7), inmates must submit all documentation and factual allegations available at the informal level, are limited to two continuation pages for additional details, and must include the specific remedy sought. For monetary claims, additional specific forms are required. AR 740.04(2)(E) further requires that each grievance contain only one issue. A grievance lacking these elements of specificity will be rejected.

According to AR 740.04(2)(B), grievances are prohibited when they contain "Specific claims or incidents previously filed by the same offender" and AR 740.04(1) warns that offenders may face disciplinary action for filing such grievances. If Aguilar had filed additional grievances separately and specifically labeled his claims as ADA violations after already grieving the September 13, 2021 incident and its surrounding circumstances, he would have risked punishment under these provisions. AR 740.04(2)(E) further reinforces this by prohibiting "the inclusion of more than one grievance issue per form." The irony of NDOC's current position is striking - they argue Aguilar failed to specifically label his grievances as ADA claims, yet their own regulations would have prohibited him from filing additional grievances about the same incident under a different legal theory.

Although the defendants acknowledge that compliance with the ARs is required on page 4 of their Opposition, Defendants did not include any citation to any applicable AR in their Opposition and by implication fail to argue at all that Aguilar's grievances failed to comply with such ARs, so any such arguments are waived.

Moreover, any ambiguity in NDOC's exhaustion requirements must be construed in Plaintiff's favor. "[W]hen prison officials fail to 'clearly identif[y]' proper route for exhaustion, they cannot later fault prisoner for failing to predict correct choice." *Shaw v. Jahnke*, 607 F. Supp. 2d 1005, 1009 (W.D. Wis. 2009). NDOC's regulations do not explicitly require inmates to cite specific legal theories in their grievances.

Again, based on AR 740's requirements that inmates must demonstrate a loss or harm" and state a specific remedy, Aguilar's grievances in Exhibit 1 to the Opposition regarding the September 13, 2021 incident met these standards. In informal grievance for Issue Id. #20063128564, filed September 29, 2021, Aguilar identified himself as "partially blind and I am an ADA inmate" [ECF 51-1] and detailed being "hand cuffed and beaten by at least five NNCC Officers," [ECF 51-1]. In his first level grievance, filed October 27,

2021, Aguilar emphasized he was an "ADA person blind person" who was assaulted while restrained, stating that "CO J Tafelmeyer CO Johnson CO mahon CO sheeks should be charge[d] with excessive use of force and assault on [an] ADA person blind person because i was hand cuffed and shacked first." [ECF 51-1] The first level response was issued January 14, 2022, partially granting the grievance and referring it to the Inspector General's office. *Id.* Throughout these grievances, Aguilar described the resulting injuries that required him to use a wheelchair for six months followed by a walker, and he complied with AR 740.04(2)(E)'s requirement that each grievance contain only one issue, providing NDOC with clear notice that a disabled inmate was claiming mistreatment directly related to and because of his disability status.

These grievances, taken together, gave NDOC "an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

Also, the PLRA does not require exhaustion when circumstances render administrative remedies effectively unavailable. *Nunez v. Duncan*, 591 F.3d 1217, 1223 (9th Cir. Or. 2010). Here, AR 740.04(2)(B) explicitly prohibits filing grievances about "Specific claims or incidents previously filed by the same offender" and AR 740.04(1) warns that offenders "may face disciplinary action" for such filings. Therefore, after Aguilar filed grievance #20063128564 detailing the September 13, 2021 incident and its disability-related causes, filing an additional grievance specifically labeled as an ADA claim about the same incident would have subjected him to discipline under NDOC's own regulations. NDOC cannot render the administrative remedy effectively unavailable by threatening punishment for filing additional grievances about the same incident, while simultaneously arguing Aguilar failed to exhaust because he didn't file additional grievances explicitly labeled as ADA claims.

The argument that Aguilar failed to exhaust his administrative remedies ignores both the Ninth Circuit's standard that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought" (*Griffin*, 557 F.3d at 1120) and the clear factual record. Aguilar's grievances (#20063128564 and #20063158946) explicitly identified him as "partially blind and... a ADA inmate" who uses a "blind stick and walker," and detailed specific instances of alleged mistreatment while restrained, including identifying the officers involved and resulting injuries. These grievances not only met AR 740's requirements for factually demonstrating harm and stating specific remedies, but also provided NDOC clear notice that a disabled inmate was claiming mistreatment related to his disability status - which is all that is required under both the PLRA and NDOC's own regulations.

### *B. The proposed Amendment States a Viable ADA Claim*

The opposition fundamentally mischaracterizes Plaintiff's ADA claim. Under *O'Guinn v. Lovelock Corr. Ctr.*, to state a Title II ADA claim, a plaintiff must allege: "(1) He is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entities' services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." 502 F.3d 1056, 1060 (9th Cir. 2007).

The proposed Amended Complaint satisfies each element comprehensively. First, Aguilar clearly establishes his disability through his glaucoma diagnosis, recent cataract surgery, and partial blindness. Second, as an NDOC inmate, he was qualified to participate in prison services and programs. Third and fourth, the proposed Amended Complaint details a systematic pattern of discrimination and exclusion specifically

because of his disability.

Most critically, the September 13, 2021 incident was not merely concurrent with Aguilar's disability - it was directly caused by it. The proposed Amended Complaint details how the altercation began precisely because Aguilar was wearing headphones to compensate and could not hear, or obviously see, Johnson giving commands. This was the culmination of weeks of disability-based discrimination, as the proposed Amended Complaint describes Officer Johnson repeatedly harassing Aguilar for being late to pill calls due to his impaired navigation, wearing medically necessary sunglasses, using headphones for auditory compensation, taking longer than the allotted 15 minutes to eat due to his visual impairment, and having his living space repeatedly left in disarray, making navigation hazardous given his disability.

Moreover, as recognized in *Georgia v. United States*, an inmate states a Title II claim based on the alleged deliberate refusal to accommodate disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs. 546 U.S. 151, 157 (2006). The proposed Amended Complaint details NDOC's systematic failure to make "reasonable modifications in policies, practices, or procedures" as required by 28 C.F.R. § 35.130(b)(7). Specifically, the proposed Amended Complaint alleges that NDOC denied Aguilar's explicit August 14, 2021 request for a vision-impaired vest, failed to modify meal time allowances for his slower pace, failed to maintain his living space in a way that accommodated his navigation needs, failed to train officers on accommodating visual impairments, and failed to adjust policies regarding headphone use for visually impaired inmates who rely on enhanced audio cues.

The subsequent assault while restrained and denial of immediate medical care - particularly concerning given Aguilar's known eye conditions and recent surgery - were not incidental to his disability but rather the direct result of NDOC's broader pattern of

discrimination and failure to accommodate his visual impairment. As detailed in the proposed Amended Complaint, this systematic failure to accommodate Aguilar's disability-related needs in violation of Title II directly caused his injuries and ongoing disabilities, now requiring him to use a walker after six months in a wheelchair. This is precisely the type of discrimination that the ADA was designed to prevent in the prison context.

### D. The Claims Are Properly Joined

The opposition confusingly argues that the ADA claim "could be the subject of a separate action" and therefore should be denied. However, this argument ignores that the ADA claim arises from the exact same transaction or occurrence as the original claims—the September 13, 2021 incident and the circumstances leading to it. The opposition's cited authority, *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997), is inapposite as it deals with supplemental pleadings under Rule 15(d) for events that occur after the filing of a complaint before a court, not amendments under Rule 15(a)(2).

### III. CONCLUSION

The opposition fails to demonstrate that the proposed amendment would be futile. Aguilar properly exhausted his administrative remedies and states viable claims under the ADA that are appropriately brought with the existing claims. For these reasons, Plaintiff respectfully requests that the Court grant leave to file the proposed Amended Complaint.

Dated: Nov 7, 2024

By: */s/ Luke Busby, Esq.*
Luke Busby, Esq.

Exhibit 1

1. NDOC Administrative Regulations

**CERTIFICATE OF SERVICE**

I certify that on the date shown below, I caused service to be completed of a true and correct copy of the foregoing by:

_____ personally delivering;

_____ delivery via Reno/Carson Messenger Service;

_____ sending via Federal Express (or other overnight delivery service);

\_\_\_\_ depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,

\_\_x\_\_ delivery via electronic means (fax, eflex, NEF, etc.) to:

    Mark Hackmann
    100 N. Carson St.
    Carson City, NV 89701
    813-340-1181
    Email: mhackmann@ag.nv.gov

Dated: Nov 7, 2024

By: _/s/ Luke Busby, Esq._
Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
Phone (775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*