Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| DAVID AGUILAR,<br><br>    Plaintiffs,<br><br>    v.<br><br>TAFELMEYER, JOSEPH JOHNSON, ZACHARY MAHON, SKYLER SHEEKS, and THE NEVADA DEPARTMENT OF CORRECTIONS, a political subdivision of the State of Nevada,<br><br>    Defendant(s). | Case No.: 3:23-cv-00547-ART-CSD<br><br>**AMENDED COMPLAINT** |

COMES NOW, Plaintiff, DAVID AGUILAR (the "Plaintiff"), by and through the undersigned counsel, and hereby files the following Amended Complaint against J. TAFELMEYER, JOSEPH JOHNSON, ZACHARY MAHON, SKYLER SHEEKS, and THE NEVADA DEPARTMENT OF CORRECTIONS (the "Defendants").

**JURISDICTION OF THE COURT**

1.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201; Title II of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 1983, 12101, and 1988.

## PARTIES

2. Each of the named Defendants below is sued herein in their personal capacity for actions taken against the Plaintiff under the color of state law as described below. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

3. As employees of the Nevada Department of Corrections ("NDOC"), the named Defendants exercised power over the Plaintiff possessed by virtue of state law and made possible only because the Defendants were clothed with the authority of state law as NDOC employees. *West v. Atkins*, 487 U.S. 42, 49 (1988).

4. Prison officials, when acting in their official capacity, are acting under color of state law. See *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

5. Defendant J. Tafelmeyer is and was at all relevant times employed by NDOC as a prison guard.

6. Defendant Joseph Johnson was at all relevant times employed by NDOC as a prison guard.

7. Defendant Zachary Mahon is and was at all relevant times employed by NDOC as a prison guard.

8. Defendant Skyler Sheeks is and was at all relevant times employed by NDOC as a prison guard.

9. Defendant Nevada Department of Corrections ("NDOC") administers the Nevada prison system and is a public entity. NDOC is charged with the responsibility of ensuring a safe and humane environment for inmates to prepare inmates for successful reintegration into Nevada's communities by acting in a professional and ethical manner, utilizing the highest standards. NDOC, at all relevant times, was responsible for the policies, actions, inactions, procedures and practices of its respective employees and/or agents.

## NATURE OF THE CASE

10. This is a civil rights action brought under 42 U.S.C. § 1983, the Eighth Amendment to the United States Constitution, and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., seeking damages and injunctive relief against Defendants for violating Plaintiff David Aguilar's constitutional and statutory rights.

11. Plaintiff Aguilar, an inmate at Northern Nevada Correctional Center (NNCC), suffers from serious medical conditions including glaucoma in both eyes. Prior to the incident in question, he had recently undergone cataract surgery and was partially blind. These conditions substantially limited one or more of his major life activities.

12. On September 13, 2021, Aguilar was subjected to excessive force by the Defendant corrections officers. Despite his known visual impairment and vulnerability, Aguilar was struck, beaten, and tased by the Defendants, even after being placed in full mechanical restraints. This use of force resulted in severe injuries that left Aguilar confined to a wheelchair for six months and subsequently requiring a walker.

13. Defendants violated Aguilar's Eighth Amendment rights in two ways:

a) By using excessive force against him, applying force maliciously and sadistically for the purpose of causing harm rather than in a good-faith effort to maintain or restore discipline; and

b) By showing deliberate indifference to his serious medical needs, particularly when Defendant Tafelmeyer refused to allow Aguilar to receive medical care after the beating.

14. Additionally, Defendant Nevada Department of Corrections (NDOC) violated the ADA by systematically failing to provide necessary accommodations for Aguilar's disability and failing to reasonably modify policies to ensure equal access to programs, services, and activities within the prison. These violations include, but are not limited to:

failing to provide Aguilar with a requested red or yellow vest for vision-impaired inmates; failing to properly train its officers on how to interact with and accommodate visually impaired inmates, as evidenced by Officer Johnson's repeated harassment of Aguilar for issues directly related to his visual impairment; failing to adjust meal time allowances and other daily routines to accommodate Aguilar's slower pace due to his visual impairment; failing to maintain Aguilar's living space in a manner that accommodated his visual impairment; and failing to appropriately classify and house Aguilar in a manner that would ensure his safety and access to necessary accommodations as a visually impaired inmate. This pattern of discrimination culminated in the use of excessive force against Aguilar and the subsequent denial of immediate medical care, both of which were exacerbated by NDOC's failure to properly account for and accommodate Aguilar's visual impairment.

15. Through this action, Plaintiff seeks to vindicate his rights under the Constitution and federal law, to obtain compensation for the violations of his rights, and to secure the medical care and accommodations to which he is entitled under the Eighth Amendment and the ADA.

## ALLEGATIONS OF FACT

16. On or around August 14, 2021, Aguilar submitted a kite to the Director of Nursing, informing them that he was classified as ADA and placed in Unit 1-A-1 dorm.

17. In this kite, Aguilar explicitly stated that he was legally blind and required specific accommodations, including a walking stick and a red or yellow vest for the vision impaired.

18. Despite Aguilar's clear communication of his needs, NDOC failed to provide him with the requested vest, treating him as a regular inmate instead of accommodating his disability.

19. Prior to September 13, 2021, Aguilar was known to have glaucoma in both

eyes, which significantly impaired his vision.

20. Prior to September 13, 2021, Aguilar had recently undergone surgery on one of his eyes to correct a cataract, further complicating his visual impairment.

21. On September 13, 2021, Aguilar was an ADA inmate and was "partially blind" due to his eye conditions.

22. In the weeks leading up to September 13, 2021, Corrections Officer Joseph Johnson consistently failed to accommodate Aguilar's disability and subjected him to harassment.

23. Johnson would frequently yell at Aguilar for being late to pill call or returning late from the Chow Hall, disregarding Aguilar's visual impairment which made navigation difficult.

24. Johnson would harass Aguilar for not removing his sunglasses in the kitchen and Chow Hall, failing to understand that Aguilar needed them due to his light sensitivity.

25. Johnson would regularly search Aguilar's living area, including his tub and bed area, and leave it in complete disarray, making it extremely difficult for Aguilar to navigate his space given his visual impairment.

26. Johnson would consistently tell Aguilar to turn down his TV or radio, even when Aguilar was wearing headphones, which Aguilar relied on to compensate for his limited vision.

27. Due to the harassment from Johhnson during meal times, Aguilar often quit going to dinner to avoid the hassle, as he was usually only given 15 minutes to eat, which was insufficient given his disability.

28. This pattern of harassment and failure to accommodate occurred almost daily when Johnson was on duty in the unit, up until September 13, 2021.

29. On September 13, 2021, Johnson entered Aguilar's housing unit and

attempted to give Aguilar verbal commands.

30. Due to his visual impairment, Aguilar was wearing headphones to assist with his auditory perception, as he relied more heavily on his hearing to compensate for his limited vision.

31. Aguilar could not hear Johnson's commands due to the headphones he was wearing.

32. Misinterpreting Aguilar's lack of response as defiance rather than an inability to hear because of the headphones, Johnson struck Aguilar in the face with Aguilar's own headphones.

33. Startled and disoriented by the sudden impact, and unable to clearly see his attacker due to his glaucoma, Aguilar involuntarily "backhanded" in the direction of the strike with his walking cane as a reflexive response to protect himself.

34. On September 13, 2021, failing to recognize that Aguilar's response was involuntary and stemmed from his disability, Johnson ordered Aguilar to stand up.

35. Despite his confusion, Aguilar complied with Johnson's order to stand.

36. Johnson then punched Aguilar in the face, exacerbating the situation that arose due to Aguilar's disability.

37. After Johnson punched Aguilar, Corrections Officers J. Tafelmeyer, Mahon, and Sheeks entered the housing unit and ordered all the other inmates to leave the dorm.

38. Aguilar was then placed in "full mechanical restraints," the corrections officers beat and tased him, despite Aguilar's obvious vulnerability due to his visual impairment.

39. On September 13, 2021, after the beating, Tafelmeyer refused to allow Aguilar to receive medical care, disregarding the heightened risk of injury due to Aguilar's pre-existing eye conditions.

40.     On September 13, 2021, Aguilar was stripped naked and placed in a cell until the next day, without consideration for his special needs as a visually impaired inmate.

41.     On September 14, 2021, Aguilar was placed in a wheelchair—because of the extent of his injuries caused by the defendants—and transported to Ely State Prison (ESP) where he finally received medical care.

42.     As a result of the September 13, 2021 attack, Aguilar suffered "major bruises" and "swelling of his face," which were particularly dangerous given his pre-existing eye conditions.

43.     For six months following the September 13, 2021 incident, Aguilar was confined to a wheelchair because of the injuries he sustained during the attack, further limiting his already impaired mobility.

44.     After the six-month period in a wheelchair, Aguilar must use a walker to get around and continues to suffer injuries resulting from the attack, compounding the challenges he faces due to his visual impairment.

## CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**(Deliberate Indifference to Serious Medical Needs Against Defendants)**
**42 U.S.C. Section 1983 - Violation of the 8th Amendment against J. Tafelmeyer**

45.     Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

46.     J. Tafelmeyer violated Aguilar's Eighth Amendment right to be free from cruel and unusual punishment by showing deliberate indifference to his serious medical needs.

47.     J. Tafelmeyer knew Aguilar faced a serious medical need because of his pre-existing glaucoma, recent cataract surgery, and partial blindness.

48.     J. Tafelmeyer was aware of Aguilar's vulnerability due to his visual

impairment when they used excessive force against him.

49. Defendant Tafelmeyer knew Aguilar faced a serious medical need when he refused to allow Aguilar to receive medical care after the beating.

50. J. Tafelmeyer made intentional decisions with respect to Aguilar's denial of immediate medical treatment; such decisions were the result of policy and intentional acts despite knowledge that such decisions put Aguilar at substantial risk of suffering serious harm.

51. J. Tafelmeyer failed to take reasonable available measures to abate the risk of harm to Aguilar, even though a reasonable officer under the circumstances would have appreciated the high degree of risk involved.

52. As a direct and proximate result of J. Tafelmeyer's conduct, Aguilar experienced physical pain, severe emotional distress, and ongoing physical limitations.

53. The conduct alleged herein caused Aguilar to be deprived of his civil rights that are protected under the United States Constitution. This conduct legally, proximately, foreseeably, and actually caused Aguilar to suffer extreme physical and emotional distress.

54. As a direct and proximate result of the aforedescribed unlawful and malicious conduct by Defendants, committed under color of law, Aguilar suffered substantial physical pain and emotional distress.

55. As a direct and proximate result of the aforedescribed unlawful conduct by Defendants, Aguilar is entitled to compensatory damages according to proof.

56. As a direct and proximate result of the aforedescribed unlawful conduct by Defendants, Aguilar is entitled to injunctive relief.

57. As a direct and proximate result of the aforedescribed unlawful conduct by Defendants, done with deliberate or reckless disregard of Aguilar's constitutionally protected rights, Aguilar is entitled to an award of punitive damages against the individual

Defendants.

## SECOND CLAIM FOR RELIEF
### (Violation of Title II of the ADA as Against NDOC)

58. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

59. Title II of the ADA applies to the operations of state prisons.

60. Title II applies to NDOC because it is a public entity.

61. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

62. Aguilar is a qualified individual with a disability because he has glaucoma in both eyes, had recently undergone cataract surgery, and was partially blind at the time of the incident.

63. Aguilar was subjected to discrimination by NDOC based on his disability because NDOC failed to accommodate his disability by:

Aguilar was subjected to discrimination by NDOC based on his disability because NDOC failed to accommodate his disability by:

a) Failing to properly train its officers, particularly Corrections Officer Johnson, on how to interact with and accommodate visually impaired inmates, as evidenced by:

    i. Johnson's repeated harassment of Aguilar for issues directly related to his visual impairment, such as being late to pill calls or meals;

    ii. Johnson's failure to understand and accommodate Aguilar's need for sunglasses in certain environments;

    iii. Johnson's disregard for Aguilar's use of headphones as a compensatory

measure for his visual impairment;

b) Failing to provide Aguilar with requested and necessary accommodations, including:

    i. Not providing the red or yellow vest for vision-impaired inmates that Aguilar explicitly requested;

    ii. Not adjusting meal time allowances to accommodate Aguilar's slower pace due to his visual impairment;

c) Using excessive force against a visually impaired inmate, specifically:

    i. Johnson's initial use of force by striking Aguilar with his headphones, without first ensuring Aguilar could hear and understand his commands;'

    ii. The subsequent beating and tasing of Aguilar by multiple officers after he was already restrained, despite his obvious vulnerability due to his visual impairment;

d) Denying immediate medical care to a visually impaired inmate after using force, particularly:

    i. Tafelmeyer's refusal to allow Aguilar to receive medical care immediately following the incident, disregarding the heightened risk of injury due to Aguilar's pre-existing eye conditions;

e) Failing to modify policies and practices to ensure equal access to prison services and activities for visually impaired inmates, as demonstrated by:

    i. The consistent pattern of harassment Aguilar faced during routine activities such as meals and pill calls;

    ii. The failure to provide adequate time and assistance for Aguilar to navigate to and from various locations within the prison;

f) Failing to maintain Aguilar's living space in a manner that accommodated his

visual impairment, specifically:

i. Johnson's regular disruptive searches of Aguilar's living area, leaving it in disarray and difficult for Aguilar to navigate safely;

g) Failing to appropriately classify and house Aguilar in a manner that would ensure his safety and access to necessary accommodations as a visually impaired inmate.

64. The discrimination and failure to accommodate was intentional—an unreasonable adherence to policies or practices that fail to take into account the needs of disabled inmates.

65. NDOC failed to make reasonable modifications to its policies, practices, or procedures to avoid discrimination against Aguilar on the basis of his disability.

66. As a direct and proximate result of NDOC's failure to accommodate Aguilar's disability and modify its policies, Aguilar experienced physical pain, severe emotional distress, and ongoing physical limitations.

67. The conduct alleged herein by NDOC caused Aguilar to be deprived of his federally protected rights under the ADA.

68. As a direct and proximate result of the aforedescribed unlawful conduct by NDOC, Aguilar is entitled to compensatory damages according to proof.

69. As a direct and proximate result of the aforedescribed unlawful conduct by NDOC, Aguilar is entitled to injunctive relief.

### THIRD CLAIM FOR RELIEF

**(Excessive Force in Violation of the Eighth Amendment Against Defendants)
42 U.S.C. Section 1983 - Violation of the 8th Amendment against J. Tafelmeyer Joseph Johnson Zachary Mahon and Skyler Sheeks**

70. Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

# Exhibit 1

# Exhibit 1

71. Defendants violated Aguilar's Eighth Amendment right to be free from cruel and unusual punishment by using excessive force against him on September 13, 2021.

72. Defendant Johnson initiated the use of excessive force by striking Aguilar in the face with his own headphones and then punching him in the face after Aguilar had complied with the order to stand up.

73. Defendants Tafelmeyer, Mahon, and Sheeks joined in the use of excessive force by beating and tasing Aguilar after he was already placed in full mechanical restraints and posed no threat.

74. The force used by Defendants was not applied in a good-faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm.

75. Defendants knew that Aguilar was particularly vulnerable due to his visual impairment and recent eye surgery, yet they proceeded to use excessive force against him.

76. The extent of injury suffered by Aguilar, including being confined to a wheelchair for six months and subsequently requiring a walker, demonstrates the severity and unreasonableness of the force used.

77. There was no need for the application of force once Aguilar was in full mechanical restraints, and the amount of force used was grossly disproportionate to any perceived threat.

78. Defendants failed to make any efforts to temper the severity of their forceful response, instead escalating the situation by involving multiple officers in beating and tasing a restrained, visually impaired inmate.

79. As a direct and proximate result of Defendants' use of excessive force, Aguilar suffered severe physical injuries, including but not limited to major bruising,

swelling of his face, and injuries that required him to use a wheelchair for six months and subsequently a walker.

80. The conduct alleged herein caused Aguilar to be deprived of his civil rights that are protected under the United States Constitution. This conduct legally, proximately, foreseeably, and actually caused Aguilar to suffer extreme physical and emotional distress.

81. As a direct and proximate result of the aforedescribed unlawful and malicious conduct by Defendants, committed under color of law, Aguilar suffered substantial physical pain, emotional distress, and ongoing physical limitations.

82. As a direct and proximate result of the aforedescribed unlawful conduct by Defendants, Aguilar is entitled to compensatory damages according to proof.

83. As a direct and proximate result of the aforedescribed unlawful conduct by Defendants, Aguilar is entitled to injunctive relief.

84. As a direct and proximate result of the aforedescribed unlawful conduct by Defendants, done with deliberate or reckless disregard of Aguilar's constitutionally protected rights, Aguilar is entitled to an award of punitive damages against the individual Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. For a judgment declaring that the actions of Defendants described herein are unlawful and violate Plaintiff's rights under the ADA and the constitution and laws of the United States;
2. For injunctive relief;
3. For compensatory damages in a sum according to proof;
4. For punitive damages in a sum according to proof as to the individual Defendants in Aguilar's Eighth Amendment claims;

5. For leave to amend or supplement this Complaint;

6. For reasonable attorney's fees pursuant to statute and 42 U.S.C. Section 1988 and the ADA;

7. For cost of suit herein incurred; and,

For such other and further relief as the Court deems just and proper.

Dated: Oct 13, 2024

By: */s/ Luke Busby, Esq.*
Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
Phone (775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

14

**CERTIFICATE OF SERVICE**

I certify that on the date shown below, I caused service to be completed of a true and correct copy of the foregoing by:

_____ personally delivering;

_____ delivery via Reno/Carson Messenger Service;

_____ sending via Federal Express (or other overnight delivery service);

\_\_\_\_ depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,

\_\_\_\_\_ delivery via electronic means (fax, eflex, NEF, etc.) to:

> Mark Hackmann
> 100 N. Carson St.
> Carson City, NV 89701
> 813-340-1181
> Email: mhackmann@ag.nv.gov

Dated: Oct 13, 2024

By: _/s/ Luke Busby, Esq._
Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
Phone (775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*