AARON D. FORD
  Attorney General
MARK HACKMANN, Bar No. 16704
  Deputy Attorney General
State of Nevada
Office of the Attorney General
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1227
E-mail: mhackmann@ag.nv.gov

*Attorneys for Defendants Joseph Johnson,*
*Zachary Mahon, Skyler Sheeks,*
*and Jeremy Tafelmeyer*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DAVID AGUILAR,

       Plaintiff,

 v.

J. TAFELMEYER; et al.,

       Defendants.

Case No. 3:23-cv-00547-ART-CSD

**OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL NDOC TO
ALLOW CONTINUING ZOOM VISITS
[ECF NO. 73]**

     Defendants, Joseph Johnson, Zachary Mahon, Skyler Sheeks, and Jeremy Tafelmeyer hereby oppose Plaintiff, David Aguilar's (Aguilar) Motion to Compel the Nevada Department of Corrections (NDOC) to Allow Continuing Zoom Visits. (ECF No. 73).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND PROCEDURAL HISTORY

     This matter arises out of Aguilar's civil rights complaint. Aguilar alleges that his Eighth Amendment rights were violated by the Defendants. Aguilar has filed a Motion requesting this Court order NDOC to designate a point of contact to arrange Zoom visits with his attorney within one business day. ECF No.73 at 6. Respectfully, there are over 1200 offenders housed at Northern Nevada Correctional Center (NNCC), many of whom have pending litigation. The Zoom capability at the institution is limited in that an attorney visit requires confidentiality, and offenders are not allowed access to the internet

for security reasons. Any Zoom calls would require the same technology used for court hearings, which includes both federal and state proceedings in criminal and civil matters. That limited Zoom capability is used for Court hearings, Early Mediation Conferences, and Parole hearings. Counsel is able to have in person meetings with his client and can arrange for confidential telephone conferences by contacting the Warden's office and arranging for those calls. This is at no charge to Aguilar. Therefore, the lack of Zoom calls does not affect Aguilar's access to the courts, which is not an active controversy pending before this Court in this litigation.

## II.    ARGUMENT

As a preliminary matter, before addressing the merits of Aguilar's Motion, Defendants wish to note two crucial issues that preclude the entry of any enforceable injunction from being issued in this case.

First, with respect to federal court cases, the State of Nevada does not waive its immunity from suit conferred by the Eleventh Amendment. Nev. Rev. Stat. § 41.031(3). Generally, the State of Nevada and arms of the state cannot be sued in federal court. See *O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (Holding that "Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment ... The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states"). In *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, (9th Cir. 2006), the Ninth Circuit held that 28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state law claims. *Id*. at 1133-34. Although the State of Nevada may consent to federal court jurisdiction for state law claims through removal, this is not a removed case. See *Lapides v. Bd. of Univ. Sys. Of Ga.*, 535 U.S. 613 (2002) (holding that state's removal of suit to federal court constitutes waiver of its sovereign immunity). Because NDOC is barred from suit in federal court they are effectively a non-party. As such, this Court does not have jurisdiction over NDOC.

Second, Aguilar's motion addresses issues that are not a part of the underlying complaint. *See* ECF No. 57. When a plaintiff seeks injunctive relief based on claims not

pled in the complaint, the court does not have authority to issue an injunction. *See Pac. Radiation Oncology, LLC. v. Queen's Med. Cntr.* 810 F.3d 631, 633 (9th Cir. 2015). Here, Aguilar has failed to allege an access to courts claim in his complaint that he has filed and which is pending before this Court. *See* ECF No. 57. As such, this Court does not have authority to issue an injunction on Aguilar's motion.

Accordingly, each of these two preliminary issues supports denial of Aguilar's motion. Furthermore, this is a civil case, not a criminal one. ECF No. 57 at 1. The Ninth Circuit has continually held that there is no right to counsel in a civil matter. *Adir International, LLC v. Starr Indemnity and Liability Company*, 994 F.3d 1032, 1039 (9th Cir. 2021). Unlike in criminal cases that implicate the Sixth Amendment right to counsel, civil litigants who cannot afford counsel are not constitutionally guaranteed the appointment of a lawyer. *Id*. As such, because Aguilar is not entitled to counsel in his case, presuming, without conceding, that NDOC somehow restricted access to his counsel by not allowing him to communicate with him via virtual call, Aguilar does not have a right to counsel as this is a civil case. Additionally, because Aguilar can access his counsel by telephone call, physical mail, and in-person visitation, he fails to set forth a valid claim that he lacks the ability to effectively communicate with his counsel.

## A. The NDOC has policies in place to ensure that Aguilar has access to the Courts

Prison regulations that impede an inmate's constitutional rights will nevertheless be upheld if the regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The court in Turner identified four factors for courts to use when assessing the reasonableness of a prison regulation: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact ... the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources," and (4) "the existence of obvious, easy alternatives may be evidence that the

regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89-90 (internal quotation marks omitted).

Without conceding that Aguilar has the right to Zoom calls with his attorney, the prison regulation limiting Zoom access is reasonably related to penological interests. Additionally, Aguilar fails to address this legal standard and therefore fails to establish facts upon which an order could based.

### 1. A rational connection exists between the policy and the penological interests.

A rational connection exists where prison administrators can articulate the "logical connection between the regulation and the asserted goal." *Turner, supra* at 89. To strike down a regulation, the connection must not exist or be "so remote as to render the policy arbitrary or irrational." *Id.* at 89-90. This is particularly hard to demonstrate where the regulation "operated in a neutral fashion." *Id.* at 90. The burden is on prison authorities to "first identify the specific penological interests involved and then demonstrate both that those specific interests are the actual bases for their policies and that the policies are reasonably related to the furtherance of the identified interests." *Walker v. Sumner*, 917 F.2d 382, 386 (9th Cir. 1990).

In this case, the interests are clear. The ability to accommodate private Zoom hearings is limited by the lack of technology that would accommodate the meetings. Ex. A[1]. Zoom technology is limited by prison security measures. *Id.* Offenders do not have access to computers or the internet. This is to prevent offenders from accessing materials which would endanger themselves or others. Therefore, Zoom meetings are limited to the terminal used for Court hearings. That terminal is used for Court hearings in state and federal court. Typically, these hearings are by Court order. Additionally, the terminal is used for Early Mediation conferences on Tuesdays and Fridays, and for Parole hearings

---

[1] Exhibit A Declaration of Associate Warden Clark. While the declaration specifically mentions *Ware v. Sullivan, et al.*, 3:22-cv-00037-ART-CSD, the information contained in the declaration is related to the same institution and same motion by the same Plaintiff's counsel as the instant matter.

on other days of the week. There are over 1300 offenders currently housed at NNCC.  Ex. A. If accommodation is made for one offender, it would need to be available for all. Otherwise, NDOC would risk violation of the Fourteenth Amendment rights of the other offenders.  Therefore, there is a legitimate purpose in the policy.

### 2.    There are alternative means of exercising his rights

If there are alternative ways a prisoner can exercise their asserted right, then the prison regulation is less likely to violate the Constitution. *Turner*, 482 U.S. at 90. If alternatives exist, "courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Id*. (internal quotation marks omitted). Alternatives are interpreted broadly; if a prisoner can still exercise the asserted right in any similar, though not identical way, the prisoner's constitutional rights are preserved. See *Mauro v. Arpaio*, 188 F.3d 1054, 1061 (9th Cir. 1999).

There are a myriad of ways that Aguilar can exercise his right to counsel. Counsel can come to Carson City and meet with Aguilar in person. Ex. A. NNCC is approximately 43 minutes from counsel's office. Aguilar can call his attorney, and if the attorney's number is put in the system, the call will not be recorded. Counsel can contact the Warden's administrative assistant, who can set up a call with Aguilar in a private room. This call would not cost Aguilar any money. Ex. A. Counsel can mail the documents to Aguilar to review, as legal mail.  Legal mail would not be reviewed by the prison. Ex. B[2]. There are many ways for counsel to contact Aguilar.  Aguilar's request for Zoom calls appears to be solely for counsel's convenience, not of necessity. All of these are reasonable alternatives to a Zoom call.

///

///

///

---

[2] Exhibit B – Administratrive Regulation 722 Inmate Legal Access, eff. date, 2016-11-16.

### 2. Allowing Aguilar to communicate with his attorney via Zoom will create an undue burden for NNCC

The third Turner factor analyzes the impact of accommodating the asserted rights will have on other guards and prisoners, and on the allocation of prison resources. *Turner*, 482 U.S. at 89-90. Allowing Aguilar to communicate with his attorney via Zoom would effectively risk opening the flood gates to allow all offenders at NNCC to speak with their attorneys via Zoom. As discussed above, this is something that NNCC does not have the infrastructure to support. Ex. A. Should this court require NNCC to require Zoom calls for all offenders with their attorneys, it is likely that this will cause a significant delay in scheduling such calls since NNCC has only one Zoom room. *Id*. Moreover, due to that court hearings or more importantly parole hearings may inadvertently not be calendared properly, which could lead to much more drastic issues not only for NNCC but the offenders moving forward.

Furthermore, should NNCC be required to provide all its offenders Zoom communicate with its offender population it would require NNCC to create new infrastructure which would require additional funding from the state legislature. Ex. A. Such funding is not guaranteed and building such infrastructure would take time. *Id*. As such, the downstream impacts in allowing Aguilar to communicate with his attorney via Zoom would cause significant hardship on NNCC. Accordingly, the third Turner factor weighs in favor of NDOC.

### 4. The prison's denial of Zoom calls is not an exaggerated response

The fourth Turner factor analyzes whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Turner*, 482 U.S. at 89-90. As discussed above, NNCC cannot accommodate regularly scheduled Zoom calls between Aguilar and his attorney. NNCC simply does not have the infrastructure or staffing needed. However, as discussed above, there are several alternatives NDOC has implemented that allow Aguilar to communicate with his counsel.

As such, the fourth *Turner* factor favors Defendants. Furthermore, for the reasons stated above, Aguilar is not likely to succeed in showing that NDOC has denied him meaningful access to the courts

## III.    CONCLUSION

Aguilar's motion should be denied.  The NDOC is not a party to this litigation.  The *Turner* factors all favor the NDOC.  Aguilar's request is merely for the convenience of his counsel and not required for his access to the Courts.  As such, his Motion to Compel the Nevada Department of Corrections to Allow Continuing Zoom Visits (ECF No. 73) should be denied.

Respectfully submitted this 11th day of July, 2025.

AARON D. FORD
Attorney General

By:    */s/ Mark Hackmann*
MARK HACKMANN, Bar No. 16704
Deputy Attorney General

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on July 11, 2025, I filed the foregoing **OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL NDOC TO ALLOW CONTINUING ZOOM VISITS [ECF NO. 73]** via this Court's electronic filing system. Parties that are registered with this Court's electronic filing system will be served electronically.

Luke Busby, Esq.
316 California Ave.
Reno, NV 89509
*Attorney for Plaintiff*

/s/ *Jamile Vazquez*
Jamile Vazquez, an employee of the
Office of the Nevada Attorney General