Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAVID AGUILAR,<br><br>     Plaintiffs,<br><br>     V.<br><br>J. TAFELMEYER, et al.,<br><br>     Defendant(s). | Case No.: 3:23-cv-00547-ART-CSD<br><br>**REPLY TO OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL THE NEVADA DEPARTMENT OF CORRECTIONS TO ALLOW CONTINUING ZOOM VISITS** |

COME NOW Plaintiff DAVID AGUILAR, by and through his undersigned counsel, and hereby submits this reply to Defendants' Opposition (ECF No. 76) to his motion to compel the Nevada Department of Corrections (NDOC) to allow continuing Zoom visits with counsel (ECF No. 73).

The Opposition misplaces reliance on sovereign immunity and other preliminary issues, as NDOC is explicitly named as a defendant in this case (see ECF No. 57 ¶ 9), rendering those arguments inapplicable.

The Opposition also fails under *Turner v. Safley*, 482 U.S. 78 (1987), overruled on other grounds by statute as stated in *Jolly v. Coughlin*, 76 F.3d 468, 475 n.3 (2d Cir. 1996), ignoring that NDOC's restrictions on Zoom visits are not reasonably related to legitimate penological interests when alternatives like in-person visits impose greater burdens and safety risks and Zoom offers superior, cost-free communication.

The record demonstrates NDOC's capacity to facilitate Zoom visits, evidenced by the prior accommodation on February 17, 2025, and the Opposition fails to justify why such visits cannot continue. The Court should grant the motion to prevent hindering Plaintiff's ability to participate meaningfully in his case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. The Preliminary Issues Do Not Preclude Relief

Defendants assert the following preliminary issues: (1) NDOC is not a party due to sovereign immunity; (2) the motion addresses issues not pled in the complaint; and (3) this is a civil case without a right to counsel.

First, NDOC is explicitly named as a defendant in the Amended Complaint (ECF No. 57  9). This eliminates the Opposition's arguments on sovereign immunity and non-party status. The motion seeks relief from NDOC as the entity controlling Plaintiff's access to counsel, and the Court's inherent authority to issue orders necessary to manage litigation and ensure access to justice, as recognized in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), applies directly. Incarcerated plaintiffs have a constitutional right to meaningful access to the courts, which includes the ability to communicate effectively with counsel. *Lewis v. Casey*, 518 U.S. at 350-51.

Courts may order correctional facilities to provide reasonable accommodations

to facilitate attorney-client communication, particularly when alternative methods impose undue burdens or are inadequate. See *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993).

Sovereign immunity does not bar this relief, as the motion seeks to ensure ongoing access to courts in this litigation, consistent with *Lewis v. Casey*, 518 U.S. 343 (1996), and avoids overreach under *Turner v. Safley*, 482 U.S. 78 (1987). The motion does not require an access-to-courts claim in the underlying complaint, as it seeks accommodations for ongoing litigation, not new claims. Prisoners have a constitutional right of access to the courts. Prisoners have a right of contact visitation with their attorneys that is encompassed by their right of access to the courts. See *Ching v. Lewis*, 895 F.2d 608, 609–10 (9th Cir. 1990) (per curiam) (holding that a prisoner's right of access to the courts includes contact visitation with his counsel).

The Court has authority to issue orders ensuring meaningful access without amending the complaint—much like the court has authority to compel a witness subject to its jurisdiction to produce documents in response to a subpoena without such an amendment. During the COVID-19 era, federal courts ordered prisons or jails to provide video visits for attorney-inmate consultations as a feasible alternative to in-person visits, especially when in-person access was restricted to protect health and ensure meaningful access to courts. For instance, in *Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675 (E.D. Cal. Sep. 2, 2020), the Eastern District of California addressed a policy limiting in-person attorney visits and ordered the jail to facilitate confidential video conference calls. Similarly, in *Banks v. Booth*, No. CV 20-849(CKK), 2020 WL 1914896 (D.D.C. Apr. 19, 2020), the D.C. District Court

granted a preliminary injunction requiring unmonitored video visits with counsel to minimize in-person interactions during the pandemic while upholding prisoners' right to effective communication. These decisions emphasize video as a more practical substitute under *Turner v. Safley* standards when it supports access without undue burden. Fourth, while there is no absolute right to unrestricted meetings with counsel, the Plaintiff has not requested as much. Plaintiff has appointed counsel, and the issue is facilitating effective communication to ensure meaningful access to the courts. *Lewis v. Casey,* 518 U.S. at 350-51. Denying Zoom visits without a rational basis risks violating due process by hindering Plaintiff's participation, even in a civil matter.

### B. NDOC's Policies Do Not Ensure Meaningful Access and Fail Under *Turner*

NDOC's policies limiting Zoom visits are not reasonably related to legitimate penological interests under *Turner v. Safley*, 482 U.S. at 89-90. The four Turner factors—(1) rational connection to governmental interest; (2) alternative means; (3) impact on guards, inmates, and resources; and (4) obvious alternatives—favor Plaintiff.

### C. No Rational Connection Exists Between the Policy and Penological Interests

NDOC claims limited technology and security concerns justify restricting Zoom to court hearings, early mediation conferences, and parole hearings. Yet the record shows NDOC has installed infrastructure at Northern Nevada Correctional Center (NNCC), as it facilitated a Zoom visit on February 17, 2025. The Opposition's Declaration of Clark admits offenders lack internet access for security reasons but concedes Zoom uses the same technology as hearings. A rational connection requires

4

a logical link that is not arbitrary or irrational. *Turner,* 482 U.S. at 89-90. Here, the policy is arbitrary: NDOC can accommodate Zoom without granting inmates unsupervised internet access, as staff supervise the calls in a private room. Zoom poses no greater security risk than phone calls or in-person visits—indeed, it reduces risks by avoiding non-inmate entry into the facility.

### D. Alternatives Are Inadequate for Meaningful Access

Alternatives like phone calls or mail do not suffice. In-person visits are time-prohibitive, consuming two to three hours round-trip from counsel's Reno office to NNCC in Carson City (approximately 43 minutes one-way per the Opposition). Counsel, as a solo practitioner, faces significant time constraints. Phone calls lack document-sharing and impose significant per-minute costs on Plaintiff, an incarcerated individual with limited resources, violating equity under *Lewis v. Casey*, 518 U.S. at 350-51. This is discriminatory, as Zoom is free (counsel pays the subscription) and enables real-time screen-sharing for reviewing discovery, interrogatories, and other materials—essential for meaningful access, and NDOC does not dispute that it has access to the Zoom platform.

### E. Zoom Visits Impose No Undue Burden

Accommodating Zoom visits would not unduly burden NNCC. The time to arrange a Zoom meeting and move Plaintiff to a private room is identical to in-person visits, requiring the same confidentiality and staff supervision. NDOC claims "flood gates" would open for 1200 inmates, but the motion seeks relief only for this litigation, not systemwide. The Opposition exaggerates impacts, as NDOC has one Zoom terminal used for hearings but has demonstrated capacity for attorney visits. Requiring

additional infrastructure is speculative; the administrative burden is negligible compared to in-person visits, which involve security screenings, escorts, and access to restricted spaces within the prison by a non-inmate. *Turner*, 482 U.S. at 89-90. Plaintiff's right to meaningful access outweighs NDOC's stated reasons for not allowing access.

### F. Denial of Zoom Is an Exaggerated Response

Easy alternatives like Zoom exist, indicating NDOC's policy claims are exaggerated. NDOC accommodates Zoom for hearings and previously for counsel, showing feasibility. Alternatives like improved phone systems or mail are inadequate; Zoom provides superior access without cost or increased risk. *Turner*, 482 U.S. at 89-90. NDOC's policy hinders meaningful access without reasonable justification, violating *Lewis v. Casey*, 518 U.S. at 350-51.

CONCLUSION

The motion should be granted. NDOC's restrictions deny meaningful access. The Court should order continuing Zoom visits, with NDOC providing a single point of contact and requiring responses to requests within one business day.

Dated: Jul 16, 2025

By: */s/ Luke Busby, Esq.*
Luke Busby, Esq.
316 California Avenue
Reno, Nevada 89509
Phone (775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on the date shown below, I caused service to be completed of a true and correct copy of the foregoing by:

_____ personally delivering;

_____ delivery via Reno/Carson Messenger Service;

_____ sending via Federal Express (or other overnight delivery service);

\_\_\_\_\_ depositing for mailing in the U.S. mail, with sufficient postage affixed thereto; or,

\_\_\_x\_\_ delivery via electronic means (fax, eflex, NEF, etc.) to:

      Mark Hackmann, Esq.
      100 N. Carson St.
      Carson City, NV 89701
      813-340-1181
      Email: mhackmann@ag.nv.gov

Dated: Jul 16, 2025

By: /s/ Luke Busby, Esq.
Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
Phone (775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*