**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DAVID AGUILAR,

Plaintiff

v.

J. TAFELMEYER, et al.,

Defendants

Case No.: 3:23-cv-00547-ART-CSD

**Report & Recommendation of United States Magistrate Judge**

Re: ECF Nos. 100, 102, 104

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF No. 100, 102, 104.) Plaintiff filed a response. (ECF No. 112.) Defendants filed a reply. (ECF No. 117.)

After a thorough review, it is recommended that the motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding with this civil rights action pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center ("NNCC"). Plaintiff's pro se complaint was screened and allowed to proceed on its claims of deliberate indifference to serious medical needs and excessive force in violation of the Eighth Amendment. (ECF No. 6.) The court later appointed counsel to represent Plaintiff, and counsel then filed a first amended

complaint adding a claim of violation of Title II of the Americans with Disabilities Act against the NDOC. (ECF No. 57.)

Defendants have moved for summary judgment, arguing: (1) Plaintiff has failed to establish a genuine issue of material fact that they violated either the ADA or the Eighth Amendment; (2) Plaintiff failed to exhaust his administrative remedies; and (3) they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment,

all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

### A. Factual Allegations

Plaintiff, an inmate in the custody of the Nevada Department of Corrections, has glaucoma in both eyes and is partially blind as a result. (ECF No. 112-2 (Pl. Ex. 3 ¶ 3).) On September 13, 2021, he was involved in a use-of-force incident involving Defendants Johnson, Tafelmeyer, Mahon, and Sheeks.

According to Plaintiff, the incident began when he was watching TV on his bunk, and Johnson told him to put on his headphones. (ECF No. 112-2 (Pl. Ex. 3 ¶ 6).) Plaintiff claims he was already wearing his headphones, and the noise Johnson heard was coming from his neighbor's radio. (*Id.*) Plaintiff showed Johnson the headphones "to demonstrate to him that [he] was complying with his command." (*Id.*) Johnson responded by grabbing the headphones and throwing them at Plaintiff, hitting him in the teeth. (*Id.*) Plaintiff tried to get up, and in doing so, his walking stick brushed Johnson's chest. Plaintiff did not intend this as a strike and indeed claims he did not strike Johnson at any point during the encounter. (*Id.*; Def. Ex. K.) Johnson said, "Oh now you have a weapon," and kicked the walking stick out from underneath Plaintiff as he was trying to stand. (*Id.* ¶ 7.) Johnson then grabbed Plaintiff's arm, swung Plaintiff around,

and took Plaintiff to the wall and then to the floor. (*Id.*) On the way down, Plaintiff's mouth hit the bunk, breaking a partial in his mouth. Once on the floor, Johnson punched Plaintiff several times in the face before eventually getting Plaintiff face down. (*Id.*) While Plaintiff was on the ground, Defendants Mahon, Sheeks, and Tafelmeyer beat Plaintiff and sat on his back, continuing to beat him even after he was cuffed and shackled. (*Id.* at ¶ 8.) Plaintiff was tased several times and claims he passed out twice during the incident. (*Id.*) After the incident, Plaintiff does not recall receiving any medical treatment or being evaluated. The next day, he was transferred to Ely State Prison. (*Id.* at ¶ 9.)

According to Johnson, he had already told Plaintiff to put on his headphones once before when, upon returning to Plaintiff's area, he noticed Plaintiff's TV was still very loud. Johnson again told Plaintiff to put on his headphones, and Plaintiff responded by handing Johnson his headphones "in a mildly aggressive manner." Johnson took the headphones and threw them on Plaintiff's bed.[1] Plaintiff then struck Johnson across the chest with his cane. Johnson ordered Plaintiff to the wall, and as Johnson was trying to call for help on his radio, Plaintiff struck him twice with his fist, at least once in the face. Johnson attempted to regain control, and they both ended up on the floor, with Plaintiff on top. Plaintiff proceeded to punch Johnson in the face about four times before Johnson was able to get Plaintiff off him. As Johnson stood, Plaintiff hit him again. Johnson then grabbed hold of Plaintiff's arm and flipped him over himself, and both fell to the ground face up, with Johnson on top. Johnson struck Plaintiff three times in the face before turning over and taking hold of Plaintiff's hands, as Plaintiff called out to the other inmates to come help him. Johnson then told everyone in the dorm to leave and ordered Plaintiff

---

[1] During his recorded interview, Johnson did not state he hit Plaintiff with the headphones, but the motion for summary judgment apparently accepts that there is evidence in the record that the headphones hit Plaintiff. (*See* ECF No. 100 at 3 (citing Def. Ex. B at 18).)

onto his stomach. Johnson had to manually move Plaintiff into position, and Plaintiff resisted putting his hands behind his back and the wrist restraints. At that point, the other officers entered and helped as Plaintiff continued to resist. One officer was able to secure Plaintiff's legs, and a lieutenant[2] entered and tased Plaintiff in the back. (ECF No. 113-2 (Pl. Ex. 4 (manual filing of audio recording)); *see also* ECF No. 102-1 (Def. Ex. B).)

Inmate Ray Moraga states that Plaintiff hit Johnson with his cane. (ECF No. 112-4 (Pl. Ex. 6 (Moraga Decl.).) Mr. Moraga also states that once Plaintiff was restrained, he did not pull away or resist restraint, but that Tafelmeyer nevertheless proceeded to strike Plaintiff twice in the right side chest area with his knee. (*Id.*)

After the altercation, Plaintiff was moved to another unit at NNCC before being transferred to Ely State Prison the next day. (ECF No. 100-1.)

Plaintiff's medical records reflect that after the incident, Plaintiff was evaluated by a nurse and made multiple complaints about his right hand, left shoulder, and neck. The nurse contacted the on-duty doctor, who ordered an x-ray. (ECF No. 102-3 at 76.) The next notation in Plaintiff's chart is 23 hours later, after his transfer to Ely, at which time Plaintiff complained of a left leg injury and a headache. (*Id.* at 73.)

In his declaration, Plaintiff states that before this incident, Johnson frequently gave him a hard time for issues that were related to his disability, such as Plaintiff taking a long time to get to the chow hall or pill call, and would often search Plaintiff's area, leaving it a mess. (ECF No. 112-2 at 3.)

---

[2] In their motion, Defendants say it was Sergeant Flamm who tased Plaintiff. (ECF No. 100 at 4.) Flamm is not a defendant in this matter.

**B. Exhaustion**

**1. Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement thus applies to all of Plaintiff's claims in this case. *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061–62 (9th Cir. 2007) (An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*. at 1168, 1170-71 (citations omitted).

Once a defendant shows the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did not meet his burden when he failed to identify any actions prison staff took that impeded his

ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process). The ultimate burden of proof, however, remains with the defendant. *Id*.

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. at 218.

An inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 578 U.S. 632, 641 (2016). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (quoting *Booth*, 532 U.S. at 738).

**2. NDOC's Exhaustion Procedure**

To exhaust administrative remedies within NDOC, inmates must utilize the inmate grievance process which is set forth in NDOC's Administrative Regulation (AR) 740. The inmate must proceed through three levels for a grievance to be considered exhausted—informal, first, and second levels. (ECF No. 112-6 (effective Nov. 20, 2018).)[3]

[3] Defendants' exhaustion argument relies on the current version of AR 740, which went into effect a few months after the events about which Plaintiff complains. (ECF No. 100-2 (Def. Ex. J (AR 740 effective Apr. 28, 2022)).) It therefore does not apply in this case.

The regulation in effect at the time of the events in this case specified that grievances "may be GRANTED, DENIED, PARTIALLY GRANTED, ABANDONED, DUPLICATE, NOT ACCEPTED OR GRIEVABLE, RESOLVED, SETTLED, WITHDRAWN; or referred to the Office of the Inspector General (IG) at any level. . . ." (ECF No. 112-6 at 3.) It further provides:

> An inmate whose grievance is denied in its entirety may appeal the grievance to the next level . . . unless the action requested has already been Granted at a lower level. . . . . If the Grievance is 'Granted' at any level, the grievance process is considered complete and the inmate's administrative remedies exhausted, and the inmate cannot appeal the decision to a higher level.

(*Id.* at 6.)

The record reflects that Plaintiff filed an informal grievance on September 16, 2021, which was assigned Grievance No. 2006-31-28564.[4] (ECF No. 100-4 (Def. Ex. G).) The grievance stated:

> I am partially blind and I am a A.D.A. inmate. On 9-13-2021 I was assaulted by NNCC staff. I was handcuffed and beaten by at least five NNCC officers. Please look at film recording, all of it should have been recorded. I wish to file charges on everyone who hit me and assaulted me. I was then stripped naked and placed in a cell until the next morning of 9-14-2021. I was then placed in a wheelchair and put on a bus to here at Ely. I was never given medical treatment until I arrived here at Ely. "Medical staff here at Ely has been giving me great medical treatment," Thank you! I still need my eye-glasses which are in my property…
>
> Please investigate and file charges on all those involved in us[]ing excessive force on me. I was handcuffed and then beaten badly. I was refused medical treatment at N.N.C.C. and it was excessive use of force.

---

[4] Defendants also identify Plaintiff's disciplinary appeal, Grievance No. 2006-31-31695, as relating to the claims in this action, but Plaintiff does not assert this grievance – which was not appealed to the second level – exhausted his administrative remedies. (*See* ECF No. 100-3 at 7 (Def. Ex. F); ECF No. 100-5 (Def. Ex. H).) Plaintiff also identifies a kite he filed, seeking a yellow vest and cane. But a"kite is not a grievance through which Plaintiff could exhaust his administrative remedies." *Ciolino v. State of Nevada*, No. 2:23-CV-00030-ART-NJK, 2026 WL 891910, at *4 (D. Nev. Mar. 31, 2026). The court therefore looks only to Grievance No. 28564 to determine whether Plaintiff's claims are exhausted.

(*Id.* at 2, 4.) A checkmark was placed in the box next to "Grievance Upheld," and a separate explanation provided that the grievance was "partially granted" and referred to the Investigator General's office for further review. (*Id.* at 2; ECF No. 100-3 at 9.) Plaintiff filed a first level grievance, and the response again noted the grievance was partially granted and referred for investigation, pending the outcome of the investigation. (ECF No. 100-3 at 9-10.) Plaintiff did not file a second level grievance. And there is no indication on the record that the grievance was ever formally denied. (*See id.*)

Plaintiff argues that any further appeals of this grievance were "effectively unavailable," based both on AR 740, which provided that a grievance that is "granted" is considered exhausted, and the responses given at the informal and first level, which precluded him from appealing further.

In *Ross v. Blake*, the Supreme Court noted three instances where administrative procedures are not available: First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 578 U.S. at 643.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. at 643-44. "In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. This may occur "[w]hen rules are so confusing that … no reasonable prisoner can use them[.]" *Id*. at 644 (citation and quotation marks omitted). "[W]hen a remedy is … essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id*. (citations omitted). Finally,

administrative remedies are unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.

Administrative remedies can be effectively unavailable where a grievance was improperly screened. To fall within this exception, "the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Sapp v. Kimbrell*, 623 F.3d 813, 823–24 (9th Cir. 2010).

The applicable version of AR 740 was not clear as to how an inmate was to exhaust a grievance that was "partially granted." It states that a grievance "granted" at any level is considered exhausted and that a grievance "denied in its entirety" can be appealed to the next level. Omitted from these instructions is what to do with a grievance that is "partially granted" and marked "upheld." This omission rendered the administrative remedy "effectively unavailable" under Plaintiff's circumstances, where the responses he received at both levels were identical and allowed for no further appeals of the matter, and where there is no evidence Plaintiff ever received a formal denial of his grievance. *See Brown v. Valoff*, 422 F.3d 926, 937–38 (9th Cir. 2005) (administrative remedies effectively unavailable where grievance was partially granted and referred for staff complaint investigation and response to inmate essentially signaled that "no further relief will be available through the appeals process"); (ECF No. 100-3 at 10). Thus, as further appeals of Grievance No. 2006-31-28564 were effectively unavailable, Plaintiff has sufficiently exhausted the claims asserted therein.

The court is not persuaded by Defendants' argument that because the grievance sought criminal charges, which were not granted at any point, that Plaintiff was required to keep

appealing the grievance through the final level of review. Contrary to Defendants' suggestion otherwise, nothing on the record before the court indicates that the grievance was "denied," even in part, such that Plaintiff would understand he needed to file further appeals. This conclusion is again underscored by the fact that Plaintiff received identical responses at both levels of review, indicating to any reasonable person that there was nothing to be gained in filing yet another appeal, especially where nothing in AR 740 suggested otherwise.

Accordingly, the court considers to what extent Grievance No. 2006-31-28564 exhausted the claims in this action.

A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp*, 623 F.3d at 824. Grievance No. 2006-31-28564 clearly put prison officials on notice of Plaintiff's excessive force and deliberate indifference to medical needs claims, so those claims are exhausted.

As to Plaintiff's A.D.A. claim, the grievance notes that Plaintiff is "partially blind" and an "A.D.A. inmate," before detailing the excessive force and deliberate indifference claims. The court concludes that these allegations were sufficient to exhaust those parts of Plaintiff's A.D.A. claim related to excessive force and denial of medical care – subparts (c) and (d) of the claim.

However, as to the entirety of the rest of the claim, the grievance is silent. There is nothing in the grievance relating to Plaintiff's claim that NDOC did not accommodate his disability by: (1) failing to properly train its officers on how to interact with and accommodate visually impaired inmates, as evidenced by Johnson's repeated harassment of Plaintiff for being late to pill call or meals, his failure to understand and accommodate Plaintiff's need for sunglasses, and his disregard for Plaintiff's use of headphones as a compensatory measure for his visual impairment; (2) failing to provide Plaintiff the red or yellow vest for vision-impaired

inmates that Plaintiff requested and not adjusting meal time allowances to accommodate Plaintiff's slower pace; (3) failing to modify policies and practices to ensure equal access to prison services and activities for visually impaired inmates, as demonstrated by the consistent pattern of harassment Plaintiff faced during routine activities such as meals and pill calls and the failure to provide adequate time and assistance for Plaintiff to navigate to and from various locations within the prison; (4) failing to maintain Plaintiff's living space in manner that accommodated his visual impairment, specifically Johnson's regular disruptive searches of Plaintiff's living area, leaving it in disarray and difficult for Plaintiff to navigate safely, and (5) failing to appropriately classify and house Plaintiff in a manner that would ensure his safety and access to necessary accommodations as a visually impaired inmate. (ECF No. 57 at 10-11.)

Plaintiff apparently admits as much when he does not discuss the exhaustion status of these myriad assertions and instead argues only that claims related to 'the assault, strip-search, denial of clothing, overnight confinement in a bare cell, and delayed medical treatment" are exhausted. (ECF No. 112 at 10.) As just noted, the A.D.A. claim is indeed exhausted insofar as it relates to the excessive force incident and denial of medical care thereafter. However, the complaint does not allege any A.D.A. claim concerning the strip-search, denial of clothing, and overnight confinement in a bare cell, so those claims are not even part of this action.

Accordingly, the court recommends the District Judge find that Plaintiff's A.D.A claim has not been exhausted except as to subpart (c) and (d) of the claim, and that except as to subparts (c) and (d), the A.D.A. claim should be dismissed for failure to exhaust.

**C. Excessive Force**

1. Standard

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

In determining whether the use of force is excessive, courts look at various factors, including: "the extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Not "every malevolent touch by a prison guard gives rise to a federal cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use

of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327).

An inmate need not establish serious injury; however, the lack of serious injury is relevant to the Eighth Amendment inquiry. *See Wilkins*, 559 U.S. at 37. "The extent of injury may also provide some indication of the amount of force applied." *Id*. "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (internal quotation marks omitted).

2. Analysis

The significant differences between Plaintiff's account of what transpired, partially corroborated by inmate Moraga, and Johnson's account demonstrate genuine disputes of material fact that preclude summary judgment – both on the merits and on the question of qualified immunity. By Plaintiff's account, he was hit first by Johnson, and although he touched Johnson with his cane, it was not a strike nor intended as a strike. Johnson responded by taking Plaintiff to the floor, during which Plaintiff's mouth hit the bed, and repeatedly punching him once there, and the other officers joined in beating him once he was down and after he was already subdued. By Johnson's account, Plaintiff repeatedly punched him, including while they were both on the floor and Plaintiff was on top, and continued to resist while calling for other inmates to help him.

On most of -- if not all -- the factors, the analysis shifts considerably depending on what the trier of fact determines happened.

Plaintiff's injuries were either long-lasting, requiring use of a wheelchair afterward, or minimal enough that an evaluating nurse cleared Plaintiff to return to a cell without further medical attention.

The force was either unnecessary – instigated and escalated by Johnson, and applied by Mahon, Sheeks, and Tafelmeyer to an unresisting Plaintiff – or necessary because Plaintiff poked Johnson with his cane, punched Johnson in the face, and resisted orders to submit.

The level of force was either beyond what was necessary to gain compliance because it began over a misunderstanding and escalated over nothing, or it was necessary because Plaintiff attacked Johnson and refused to submit.

There either was no reasonably perceived threat because Plaintiff was a blind inmate who barely touched Johnson with his cane and did not resist once he was cuffed and prone, or there was a very real perceived threat because Plaintiff reacted to Johnson throwing the headphones and hitting his mouth by punching him repeatedly and getting on top of him when they were both on the floor.

And either Johnson made no efforts to temper his response, and instead kept escalating, or the Defendants repeatedly warned Plaintiff to stop resisting and escalated their response only until compliance was achieved.

The ultimate question of whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm thus depends on several factual resolutions that are for the trier of fact and are not appropriately decided on summary judgment.

**4. Qualified Immunity**

Defendants assert they are nevertheless entitled to qualified immunity on the excessive force claim.

Qualified immunity "protects government officials who violate constitutional rights from civil liability if their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." *Simmons v. Arnett*, 47 F.4th 927, 932 (9th Cir. 2022) (citation and quotation marks omitted). Qualified immunity looks at two questions. First, whether the alleged conduct violated the plaintiff's constitutional rights viewing the facts alleged in the light most favorable to the plaintiff. *Id*. (citation omitted). Second, whether the relevant right was clearly established at the time so that the defendant would have known he was violating the right. *Id*. If the answer to either of those questions is no, the defendant is entitled to qualified immunity. *Id*.

The court has already found the alleged conduct violated Plaintiff's constitutional rights when viewing the facts in the light most favorable to Plaintiff. The question then is whether the right was clearly established.

Whether the right was clearly established is a question of law for the court. *Simmons*, 47 F.4th at 934 (citation omitted). "For a right to be clearly established, the right must first be defined at the appropriate level of specificity." (citation and quotation marks omitted). Then, "[t]he contours of [that] right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *Id*. (citation omitted, alterations original). "There need not be a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (citation omitted). It is the plaintiff's burden to prove "the right allegedly violated was clearly established at the time of the violation." *Id*. at 934-35 (citation omitted).

It was clearly established at the time of the events in this case that the malicious and sadistic use of force violates the Eighth Amendment. *Hudson*, 503 U.S. at 6-7. It was further clearly established that the use of force on an inmate who is not resisting constitutes excessive force. *See Martinez v. Stanford*, 323 F.3d 1178, 1180, 1184 (9th Cir. 2003). Finally, it was

clearly established that the use of a taser can amount to an Eighth Amendment violation if done maliciously and sadistically. *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 796 (9th Cir. 2018). Because the facts are in dispute and under Plaintiff's version of events, a clearly established violation of his constitutional rights may have occurred, the defendants are not entitled to qualified immunity at this stage of the proceedings. *See Martinez*, 323 F.3d at 1184.

Accordingly, the court recommends the District Judge deny the motion for summary judgment on the grounds of qualified immunity.

**D. Deliberate Indifference**

**1. Standard**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted). "'[A] prisoner need not prove that he was completely denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury.

*Stewart v. Aranas,* 32 F.4th 1192, 1195(9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985)); *McGuckin*, 974 F.2d at 1060.

**2. Facts**

Plaintiff bases his claim on the lack of medical care immediately following the incident. He admits he received medical 24 hours later upon arriving in Ely.[5] But he asserts that defendant Tafelmeyer – and only defendant Tafelmeyer – violated his rights by offering only a basic assessment with no care beyond that. Plaintiff cites to his expert's report, which concludes that the failure to provide immediate care following the incident was a breach in the standard of care.

Whatever the merits of Plaintiff's claim regarding medical care – which, as defendants correctly argue, in this instance would be a *delay* in the provision of medical care – Plaintiff points to no evidence that Tafelmeyer had anything to do with his delayed care. Plaintiff was in fact seen by a nurse, who talked to a doctor, who decided to order x-rays but, apparently, nothing else. Plaintiff has not alleged or offered any evidence of Tafelmeyer's involvement in this alleged constitutional violation. The court therefore recommends the District Judge grant Defendants summary judgment on this claim.

**E. ADA**

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The "alleged deliberate refusal to accommodate [an inmate's] disability-related needs in such

---

[5] Plaintiff's deliberate indifference claim, as pled and as discussed in the opposition to the motion for summary judgment, is based only on the denial of medical care and not on any other alleged conditions of confinement, such as being stripped naked and left like that overnight in a cell.

fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" plausibly states a claim under Title II. *United States v. Georgia*, 546 U.S. 151, 157 (2006).

> To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).

In opposing the motion for summary judgment, Plaintiff construes his claim as arising primarily from the failure to provide him with a yellow vest, which would have indicated to those around him that he has a disability. (*See* ECF No. 112 at 13-15 (citing NDOC AR requiring visually-impaired inmates be provided auxiliary services and discussing how the lack of a yellow vest led to Johnson's use of force in this instance.)) As discussed above, the ADA claim is unexhausted to the extent it is based upon the failure to provide Plaintiff with a yellow vest.

Plaintiff also argues, however, that pursuant to *Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211 (9th Cir. 2014), *overruled on other grounds by City & Cty. of S.F. v. Sheehan*, 575 U.S. 600 (2015)), an ADA claim exists "where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity." Defendants respond that this case does not involve an arrest and that Plaintiff was not treated as he was based the effects of his disability being misperceived as criminal activity.

However, *Sheehan* recognized two types of A.D.A. claims in the context of arrest, the other of which is

> reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to

> reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

*Id.* at 1232.

As the *Sheehan* court explained, the A.D.A. applies to any normal function of a public entity. *See id.* (citing *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002)); *Barden*, 292 F.3d at 1076 ("The focus of the inquiry, therefore, is not so much on whether a particular public function can technically be characterized as a service, program, or activity, but whether it is 'a normal function of a governmental entity.'"). And as recently affirmed by the Ninth Circuit, a "single instance of discrimination can support a disability discrimination claim under . . .the ADA." *Bell v. Williams*, 108 F.4th 809, 827 (9th Cir. 2024).

At least one district court has extended *Sheehan* to claims of excessive force in the prison context, and explained: "When applied in the prison context, it follows that the second element of a § 12132 claim can be satisfied where a correctional officer could have used less force or no force during the performance of his penological duties with respect to a disabled person." *Armstrong v. Newsom*, 484 F. Supp. 3d 808, 842–43 (N.D. Cal. 2020), *aff'd*, 58 F.4th 1283 (9th Cir. 2023).

Under these authorities, the court concludes that Plaintiff's claim of an A.D.A. violation should proceed. Plaintiff has introduced evidence that he is a qualified individual with a disability. He has produced evidence that the Defendants could have used less force and that their use of excessive force led him to suffer greater injury or indignity than other inmates in the same context. And he has produced evidence that Johnson, at least, may have acted on the basis of Plaintiff's disability, given Johnson's alleged history of harassing Plaintiff for his disability-

related slowness. Accordingly, the motion for summary judgment on the A.D.A. claim, to the extent it is based on the use of excessive force, should be denied.

To the extent the A.D.A. claim is based on the failure to provide medical care following the incident, Plaintiff makes no effort in his opposition to contest summary judgment or to identify any evidence supporting his claim. In particular, Plaintiff identifies no evidence supporting a conclusion that the denial or delay of medical care was because of his disability. It is not the court's duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "[T]he nonmoving party [must] . . . identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 781 (9th Cir. 2002). Accordingly, the court recommends the District Judge grant summary judgment to Defendants on that part of Plaintiff's A.D.A. claim based on the failure to provide medical care.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order GRANTING IN PART and DENYING IN PART Defendants' motion for summary judgment (ECF No. 100). The motion should be denied as to Plaintiff's excessive force claim and to his A.D.A. claim insofar as it is based on excessive force, and granted in all other respects.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for

consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 6, 2026

Craig S. Denney
United States Magistrate Judge